## S. K. DODSON v. THE STATE.

No. 11052.   Delivered December 14, 1927.

**Theft of Cattle—Charge of Court—Defensive Theory—Should Be Submitted.**

Where, on his trial for theft of cattle, appellant defended upon the theory that the stolen animal was bought by him and that he believed the animal appropriated was this identical animal, it was error for the trial court to fail to submit this defensive issue in his charge to the jury. Where the evidence raises a defensive theory in an affirmative way, it is incumbent on the court to submit it.   See Escabedo v. State, 225 S. W. 377.

Appeal from the District Court of Jim Wells County.   Tried below before the Hon. Hood Boone, Judge.

Appeal from a conviction for theft of cattle, penalty two years in the penitentiary.

The opinion states the case.

*B. D. Tarlton* of Corpus Christi and *Perkins & Floyd* of Alice, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is theft of cattle; the punishment confinement in the penitentiary for two years.

The state's theory was supported by facts which are, substantially, as follows:   Adolph Onken had possession of a Jersey bull which he had borrowed from one Herman Koehn, who lived in his neighborhood.   The animal in question was about four years old, was dark underneath, had dark shoulders and was light along the back.   The bull was branded HO on the right hip, the brand marks being almost connected.   His horns were tipped and one side of his nose had been marked by a ring. The ring had been removed from the bull's nose before Onken received him.   On September 11, 1926, the bull was running with four cows in Onken's 350-acre pasture.   On the date mentioned appellant controlled a pasture which was four miles north of Onken's pasture.   Appellant and a partner, Frerichs, being interested in butcher shops, bought and slaughtered cattle, and also sold hides.   They frequently slaughtered bulls and sold the hides.   In connection with their business they had a slaughter pen in the vicinity of Onken's place.   Onken left home on September 11, 1926, at which time the Jersey bull was in his pasture.   Upon his return on September 12th the bull was gone.

He made inquiry for the animal but was unable to find him. He also ran an advertisement in the paper, but the brand was incorrectly stated by the paper as being OH. On the 5th of October following, Ben Cox, a witness for the state, passed within two or three miles of appellant's pasture and saw one Solis, who worked for appellant, driving about thirty or thirty-five head of cattle along a public road. Among the cattle was a Jersey bull four or five years old with clipped horns and branded HO on the right side. Later during the same day Cox saw Solis and one Nunez driving the same herd of cattle toward the slaughter pen of appellant. They were about one-fourth of a mile from the pen when Cox saw them, and the Jersey bull he had seen earlier in the day was with the herd. There was also a roan mulish bull with the herd. On the date Cox saw the cattle appellant had delivered them, together with the Jersey bull in question, to Solis, at his, appellant's, pasture, with instructions to drive them to the slaughter pen and let them remain there. The state's witness Solis stated that there was a Jersey bull in the herd he drove to the slaughter pen, and that the animal was about four or five years old, but that he did not notice that he was branded. The cattle were placed in the slaughter pen in the presence of appellant, and Francisco Garza, who was an employee of appellant, was instructed by appellant to slaughter the Jersey bull. Garza killed the animal with a six-shooter. The hides of the slaughtered animals were salted and placed in a box with other hides and carried to the depot by Garza under the direction of appellant and his partner, Frerichs. About the middle of October, 1926, R. J. Scarbrough, a witness for the state, purchased about seventy or eighty hides from appellant and Frerichs, which were checked out to him by a Mexican who worked for appellant. About the 21st of October, 1926, the witness Scarbrough shipped the hides by freight to Sierwerssen Hide and Wool Company of Houston, the hides being received by the agent of the Southern Pacific Railroad at Houston and delivered to the driver of said hide company, who in turn delivered them to his company. There was a bull hide in the lot which was recovered by a deputy sheriff of Houston and returned to C. W. Price, sheriff of Jim Wells County. This hide was offered in evidence on the trial of the case and was identified by Onken and other witnesses as the hide of the Jersey bull lost by Onken.

Appellant's theory was supported by facts which were, substantially, as follows: D. Stehle, a witness for appellant, sold Frerichs, appellant's partner, a Jersey bull during May, 1926.

The bull was three and a half years old, dark and branded HO on the left hip. The horns were untipped at the time, but were later tipped by appellant. Several months after the sale of the bull to Frerichs, and after the investigation of the loss of Onken's bull had been instituted, Stehle furnished Frerichs a bill of sale describing the bull he had delivered to Frerichs. The bull bought by Frerichs from Stehle disappeared within a short time after he had been received, but came to appellant's pasture in August, 1926. Appellant and Frerichs were joint owners of the bull. Testifying in his own behalf, appellant stated that he saw the Stehle bull during the latter part of May, 1926, when he was being driven to the slaughter pen, but did not notice what brand he carried; that on the following morning he turned the bull out of the slaughter pen, and the bull thereafter disappeared; that in June, 1926, he saw some cattle near his pasture and that among them was the Stehle bull; that later, when he gathered his cattle he found the Stehle bull among them, branded HO on the left hip; that on the occasion his cattle were driven to the slaughter pen, as testified to by the state's witnesses, the Stehle bull and a roan bull were in the herd; that he did not again see the Stehle bull after the cattle were placed in the slaughter pen; that after the bull was slaughtered he did not see the hide, as Frerichs attended to the sale of hides; that he did not steal the Onken bull.

It is seen from the evidence that appellant contended that the Jersey bull, which the state accused him of having stolen from Onken, was the bull purchased from Stehle. Supporting the theory of appellant that his belief was honest is the fact that the animal in question was driven along a public highway in the vicinity of the places of Onken and Koehn in daylight. Conceding the state's testimony that the Onken bull was slaughtered by appellant to be true, it does not exclude the idea, when considered in connection with appellant's testimony, that appellant honestly believed that the animal in question belonged to him. If he made an honest mistake, the taking could not have been fraudulent. The court failed to submit in his main charge an instruction covering the defensive theory. Among other requested instructions, appellant timely asked the court to submit to the jury a special charge, which would have told the jury, in effect, that if they had a reasonable doubt that appellant had purchased an animal similar to the one alleged to have been stolen, and had thereafter slaughtered the bull belonging to Onken, believing the same to have been the one he had purchased, they would acquit him. We are of the opinion that

the court erred in failing to submit an affirmative instruction covering the defensive theory. Where the evidence raises the defensive theory in an affirmative way, it is incumbent upon the court to submit it. Escobedo v. State, 225 S. W. 377.

We do not deem it necessary to discuss the other matters complained of by appellant, as they are not likely to occur on another trial of the case.

For the error above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.