SECONDINO RODRIGUEZ v. THE STATE.

No. 11292.   Delivered March 21, 1928.

Murder—Charge of Court—On Defensive Theory—Must Be Submitted.

Where, on a trial for murder, the appellant testified that he fired the shot which killed the deceased, not with any intent to kill or injure, that he did not shoot toward the parties, but fired the shot downward and not in their direction, this defensive theory, if true, raised a defense to the charge of murder of manslaughter and of negligent homicide, and it was reversible error for the trial court to fail to submit this issue in his charge. See Dodson v. State, 200 S. W. 924, and Escadedo v. State, 225 S. W. 277.

Appeal from the District Court of Bee County.   Tried below before the Hon. T. M. Cox, Judge.

Appeal from a conviction of murder, penalty twenty-five years in the penitentiary.

The opinion states the case.

*H. S. Bonham* of Beeville, for appellant.

*A. A. Dawson,* State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder, the punishment confinement in the penitentiary for twenty-five years.

The deceased, Jim Hyman, his brother, John Hyman, and Rufus O'Brien, were hunting at night with dogs.  Deceased was carrying a lantern and John Hyman was leading the dogs with

a chain.    The parties had crossed through a field into the public road.    Before reaching the road they saw two cars coming.    As they crawled through the fence the cars came by.    The dogs pulled to one side and John Hyman jerked them back, saying, "Come in here, you s—s of b—s, them cars will run over you." The two cars went around a curve and stopped.    Five Mexicans got out of the cars, among them being appellant, and came back to the point where deceased and his companions were. One of the Mexicans asked deceased what he had said to him, and deceased replied, "I said nothing to you."    The Mexican who made the statement to deceased had a knife in his hand. John Hyman picked up a rock and told the Mexican not to strike deceased with the knife.    Thereupon appellant drew out a six-shooter and threw it in the face of John Hmyan and said: "You s— of a b—, run."    Deceased and his companions ran and crawled through the fence into the field.    After getting into the field, deceased said to the Mexicans, "You s—s of b—s, go on and leave us alone—we're on our own side of the fence and not bothering you."    The five Mexicans, including appellant, thereupon started back to their cars.    Appellant, after going a short distance, stopped, turned and shot deceased.    Deceased was wounded just above the hip bone on the left side, the bullet penetrating the bladder.    He died from the wound.    The foregoing facts were testified to by state's witnesses.

Appellant testified that at the time he stopped his car he understood deceased and his companions to tell him to stop; that he heard some cursing in the direction of deceased and his companions which caused him to become nervous; that he saw one of the white boys with upraised hand making a motion as if to hit his, appellant's, brother; that he, appellant, pointed a gun at him and said, "Run, you s— of a b—;" that when the white boys got into the field they began cursing; that he shot down toward the ground in an endeavor to scare them; that he had no intention of shooting or hitting either of them; that at the time he fired the shot he was sixty or sixty-five feet from deceased and his campions and couldn't see them very well; that he had understood the white boys to say after they got in the field, "Now, we are on our own side of the fence and you s—s of b—s go on and let us alone;" that he was a little bit frightened before he fired the shot; that he did not know whether the boys had a gun with them and didn't know but what they would shoot at him.    In referring to the fatal shot, appellant said:    "Then I turned around and shot, but I shot down, not towards the boys."

The court submitted instructions covering murder, manslaughter, self-defense and negligent homicide of the second degree. Appellant timely objected and excepted to the court's charge on the ground that it failed to submit to the jury one of his affirmative defenses, it being his contention that the court should have instructed the jury to acquit him if they had a reasonable doubt that he fired the shot downward and not toward deceased and his companions and had no intention of killing any member of the party. It is noted that appellant contended that he did not fire in the direction of deceased and his companions but fired downward with no intention of killing any member of the party but with the sole purpose of frightening deceased and his companions. If such facts had been believed by the jury appellant would have been entitled to an acquittal of the charges of murder and manslaughter. To sustain a conviction of negligent homicide, an apparent danger of causing the death of deceased or some other person must appear. Art. 1232, P. C.; Haynes v. State, 224 S. W. 1100; Talbot v. State, 125 S. W. 906; Howard v. State, 8 S. W. 929. Appellant's testimony, in our opinion, if believed by the jury, would have warranted the conclusion that in firing the shot there was no apparent danger of killing deceased or his companions. If he did not fire in their direction and the bullet was deflected from its course by some object, it would seem that such facts would give support to the theory that the danger of killing was not apparent. Such theory might further find support in the act that the wound was somewhat rough at the point of entrance. As we view the evidence, appellant's statement to the effect that he did not shoot toward the parties, but downward with no intention of killing them, raised a defense to the charges of murder, manslaughter and negligent homicide. Where the evidence raises the defensive theory in an affirmative way it is incumbent upon the court to submit it. Dodson v. State, 300 S. W. 934; Escabedo v. State, 225 S. W. 377.

The other questions presented are not discussed as they are not likely to occur on another trial of the case.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.