**John Stanley SIWAKOWSKI, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 37608.**

Court of Criminal Appeals of Texas.

Feb. 10, 1965.

Rehearing Denied March 24, 1965.

Paul W. Wisdom, Jr., Dallas (Court Appointed on Appeal Only), for appellant.

Henry Wade, Dist. Atty., Robert Stinson, Don Wills, Mark Troy and W. John Allison, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for robbery; the punishment, 99 years.

About 7:40 P.M., October 24, two white men, one tall and the other short, wearing white hoods with openings for their eyes, and with pistols in their hands ran into a grocery store and one of them fired several shots. The tall man ordered the two employees at the check stands to "sack up the money", and the short man directed the assistant manager to open the safe. By putting the assistant manager, James Ward, who was in charge of the store, in fear of serious bodily injury and his life, and without his consent, the two men took the money and several checks from his possession.

The assistant manager, James Ward, described the short man as being about

five feet and six inches in height, weighing 130 to 135 pounds, and wearing a dark colored shirt and dark trousers. He described the tall man as being slender and over six feet in height, and wearing a checkered shirt and dark trousers. He further testified that about 7:20 P.M., before the robbery about 7:40 P.M., two men came in the store and bought some grapes, that they were about the same height and were wearing the same type of clothing as the two men who robbed him twenty minutes later; and while testifying he identified the appellant as looking like one of the men who came in the store and bought the grapes.

The testimony of the two employees who were at check stands and from whose registers the tall man took their money was substantially the same as that of the assistant manager, Ward.

Mrs. James Ward, wife of the assistant manager of the grocery store testified: she parked her car on the north side of the store which fronted to the west. About 7:20 P.M., a green Chevrolet was parked in the second space from her. Three men got out of the Chevrolet, stood in front of the car next to Mrs. Ward, then returned to the Chevrolet. Soon thereafter, two of the men, one tall and the other short, both wearing dark shirts and trousers, entered the store. At this time the third parking space south of the front door of the store became vacant and Mrs. Ward moved her car into it. After she parked in front of the store, a car which appeared to be the same green Chevrolet she had seen on the north side was driven parallel to the store in front and behind the cars. Two men got out of the car with hoods on their heads, dressed the same as the men she had seen on the north side, and with guns in their hands entered the store and then ed her car to a nearby service station and asked the attendant to notify the police. As she drove back to the store, she saw two hooded men run from the store. She followed them for about one block, where she saw them enter a green Chevrolet like

the one she saw on the north side of the store. She got the license number of the Chevrolet, returned to the store, and after a brief time showed the police the location of the Chevrolet. Mrs. Ward described the short man as being about five feet and seven inches in height and weighing from 130 to 140 pounds.

Deputy Sheriff Brister testified that about 8:15 P.M., he saw a man run across a street into some bushes near a creek which was a short distance northeast of the grocery store, and he described this man as being five feet and six or seven inches in height and weighing about 140 pounds. While testifying, he identified the appellant as the person he saw in custody of Officer Mrs. Ward heard several shots. She back-Gregory in the creek bed a short time after he saw a man run across the street.

Officer Gregory testified that while searching the creek about 8:30 P.M., he saw a man lying on his stomach in the creek bed; that upon searching this man, who was wearing a dark checked shirt and dark trousers, he found a brown paper sack containing money in his right front pocket, and also found two paper sacks at the place where he was lying and a pistol nearby on the ground. One of the two sacks was empty and the other contained a twenty dollar bill and some change. Four live shells and one spent shell were in the pistol.

While testifying, Officer Franklin identified the appellant as the same person he saw in custody of Officer Gregory about 8:30 P.M. in the creek bed, and described appellant as being five feet and six or seven inches in height and weighing 140 to 150 pounds and wearing a black checked shirt and dark trousers. He further stated that Gregory delivered to him the pistol and the brown paper sack containing $416 in currency.

After talking with Mrs. Ward, Officer Railey found, a short distance from the store, a 1953 Chevrolet, with a warm hood,

bearing the same license number as the car for which he was searching.

The testimony reveals that brown paper sacks in the store were used by the robbers to carry away the money and checks. Each sack bore the brand or trademark of Cargo. The brown paper sack containing $416 found in the right front pocket of the appellant was similar and bore the same brand as those used by the grocery store.

On the morning of October 26, a similar paper sack containing several checks was found near the place where the appellant was arrested and they were returned to the grocery store. One of these checks was identified by the assistant manager of the store as having been cashed by the store, endorsed by it for deposit, and taken during the robbery.

The appellant did not testify but called Officer Potts who testified that after the robbery he saw the appellant at the store and that he was wearing a flowered looking sport shirt and dark trousers. The proof further shows that the appellant was not given a paraffin test, and that the gun was never examined for fingerprints.

The facts and circumstances in evidence are sufficient to warrant the jury's finding that the appellant is guilty of robbery as charged.

The appellant complains of that part of the opening argument to the jury by the state's attorney which was as follows: "This is the job of a professional hijacker". To this argument the appellant objected and moved for a mistrial on the ground that it was highly inflammatory and prejudicial. The Court sustained the objection, but overruled the motion for a mistrial.

It is evident that the robbery was previously planned, with a preview and immediate survey of the store by the robbers, followed by a fast moving and well executed plan by three men, each performing a certain job, and, to insure strict compliance with their commands, the robbery was accompanied by gunfire as the robbers ran into the store and hastily left with hoods over their heads and guns in their hands.

The jury argument was a reasonable deduction from all the evidence, and, it is concluded that no reversible error is presented. Sears v. State, 106 Tex.Cr.R. 219, 291 S.W. 547; Jones v. State, 171 Tex.Cr.R. 608, 352 S.W.2d 270; Christesson v. State, 172 Tex.Cr.R. 27, 353 S.W.2d 218.

The judgment is affirmed.

Opinion approved by the Court.