## I. H. TAPLEY V. STATE.

No. 26,285. March 4, 1953.
Appellant's Motion for Rehearing Denied
(Without Written Opinion) April 22, 1953.

496

*Schlesinger, Goodstein & Semaan*, San Antonio, for appellant.

*George P. Blackburn*, State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

Appellant was charged with murder with malice, and on his trial he was awarded a penalty of 99 years in the state penitentiary.

The facts arose from the actions of people who were all drinking beer at the time. The deceased, his wife, and two friends, who had been working on the telephone system in the town of Pearsall, in the afternoon about 5 o'clock, entered a drive-in cafe owned by the appellant and ordered a bottle of beer apiece. Appellant was in the place at that time and was drinking with some of his friends. He had been drinking rather heavily throughout the day. Some little disagreement arose on account of the fact that the deceased had placed a nickel in one of the juke boxes which failed to play. Upon being notified of this condition the appellant directed a waitress to give the deceased a nickel and also give him a handful of nickels and eventually the juke box performed its function.

At that time the deceased, possibly in a jocular mood, ordered another bottle of beer and requested that he be allowed to open an account in such place. The waitress said he had no account there. Appellant refused the deceased's request and made the statement that "if you get this little black-headed girl to come over here and talk to me, she can have anything in the house." That little black-headed girl was the deceased's wife of four months.

Later on the appellant walked over to where the deceased and his crowd were sitting and told the deceased to "shut up." At that time the deceased turned around and said, "I hope you are joking." Appellant replied, "No, you shut up." He was standing close to the deceased. The deceased struck appellant and knocked him down. He was standing over appellant, when he reached down and picked him up off the floor. They went into the ladies' rest room, which was nearby, and washed the blood off the appellant's face and nose which were bleeding as

a result of the fight. At that time it seems that apologies passed between appellant and deceased; that they made friends and came back and deceased ordered a bottle of beer to be placed before the appellant.

After the episode had passed over, appellant kept saying, "I am an old man" (he being about 44 years of age). "You ought not to have struck me." A young man was sitting by appellant. Appellant turned to him and said, "You are an old man. What would you think had he struck you?" This caused merriment and laughter among the persons present since the "old man" to whom appellant spoke was only 27 years of age. This occurrence seems to have angered the appellant who ordered the crowd to leave at once, walked out of the place, got in his car and drove away. Appellant was followed for a distance by one of his friends who evidently was expecting trouble from appellant. The witness got to appellant's home just as he was leaving with a rifle in his car. He followed appellant but was detained somewhere and did not arrive at the scene of the killing until just before the firing of the shot. Appellant was sitting in his car with his rifle in his hand and ordered his friend not to touch or grab the rifle. After appellant left the drive-in, the deceased ordered his wife to go out and get in the car and wait for him as he saw appellant coming toward the door of the drive-in with the rifle in his hand. The deceased retired into the rest room and was concealed therein at the time the appellant came to the door of the drive-in, opened the door, raised his rifle and called to another party to hold the door open. Appellant then looked over the crowd assembled in the cafe and asked them if they wanted any of it. They all indicated that they did not, so appellant went out, got in his car and moved it to the side of the drive-in. Unfortunately, it was right close to the car of the deceased wherein his wife was sitting. About that time the deceased came out the back door of the ladies' rest room, which let him outside of the cafe. Located a short distance from the main building was a storeroom where appellant kept his beer. Appellant saw the deceased running toward that store-room and fired a shot in his direction with his rifle. The bullet struck the ground just at the heels of the deceased, who then ran around the building and turned around, going toward the car in which appellant was sitting, as well as his own car in which his wife was sitting.

According to the appellant's story, he heard some noise around to his side but did not see the deceased until he was

close to him. He then jerked up his rifle which was lying across his lap and fired one shot which hit the deceased in the neck from which he died instantly. The body of the deceased was lying about four feet from the appellant's car with his head a little further away when the officers arrived.

These are the facts as near as they can be summarized from about 600 pages of a statement of facts in question and answer form.

Appellant has many bills of exception, some 47 informal bills and four formal bills.

It is contended herein that the trial court was in error in charging on provoking the difficulty, which seems to be the most serious question with which we are confronted.

The court charged the jury relative to self-defense and in connection therewith instructed on provoking the difficulty.

In the case of Flewellen v. State, 83 Tex. Cr. R. 568, 204 S.W. 657, we held that where the accused cursed the deceased and pursued him that such conduct constituted a provocation of the difficulty.

Again, in the case of Norwood v. State, 135 Tex. Cr. R. 406, 120 S.W. (2d) 806, the parties to the controversy had some previous trouble on that day, the deceased, his uncle and appellant being engaged therein; deceased and his uncle then drove away from the scene of the earlier trouble and came some distance into the town of Burnet. Appellant soon came into the town and parked his car behind that of the deceased. He got out of such car and called the uncle of the deceased to come and talk to him. Appellant reached into his car for a rifle and deceased warned his uncle not to go to talk to appellant because he had a rifle. The uncle hurriedly left there and soon heard a shot. Upon returning he saw the deceased lying dead with his rifle near him, he having been shot by the appellant. We quote from the opinion as follows:

"Ordinarily in determining whether there be evidence calling for a charge on provoking the difficulty, the trial court will not be required to go beyond the State's evidence, though in some cases this might not be true; but if there be such evidence, it would be the duty of the court to submit the law of such issue even though the trial court might believe the evidence on the

part of the accused to rebut the theory of provoking the difficulty. The determination of whether the issue be sustained or rebutted would be for the jury. See Crowley v. State, 35 S.W. (2d) 437; Garner v. State, 99 Texas Crim. Rep. 618."

Under the above decision, the jury in the present case were authorized to take into consideration the testimony as to the transaction in the cafe, the leaving of the appellant, the later return with his gun, the re-entrance into the cafe, his conduct there, his removal of his car near to that of the deceased, and his first shot at the deceased, in order to determine whether or not such was reasonably calculated to and did in fact provoke the deceased to attack appellant, the appellant so acting in order to have a pretext for killing the deceased. These facts being usually for the jury, we think the trial court was correct in charging on a provocation of the difficulty and submitting same to the jury as a part of the state's proven case.

We see no greater provocation to cause a man to fight for his life than to fire a shot at him from a high-powered rifle from within a short range.

By Bill of Exception No. 3 the appellant complains of the failure of the trial court to charge on what he contends was the affirmative defense that he did not intend to kill the deceased but merely fired the shot to stop him. Reliance is had upon our holdings in Rodriguez v. State, 109 Tex. Cr. R. 278, 4 S.W. (2d) 52; and Burt v. State, 138 Tex. Cr. R. 540, 137 S.W. (2d) 1045.

In the Rodriguez case, supra, the accused testified in part: "Then I turned around and shot, but I shot down, not toward the boys." In holding that his testimony raised an affirmative defense, this court reviewed the entire testimony of the accused, together with the undisputed physical facts, and said that there was some evidence that the bullet had been deflected in its course, which would support the appellant's claim that he had not fired in the direction of the deceased, and concluded that an affirmative charge should have been given.

In the Burt case, supra, the accused, who was a peace officer, testified that in the course of his official duties, he sought to arrest the deceased; that "I drew my gun and fired to the right of him. I didn't intend to hit the boy at all"; and further, "My intention was to shoot kind of to the right of him and possibly

stop him." We held that the court should have submitted the affirmative defense raised by his testimony.

Now, we analyze the appellant's testimony to determine if he brought his case within the rule in the Rodriguez and Burt cases. On direct examination by his own counsel, he testified as follows:

"Q. Who was right on you? A. Mr. Smith.

"Q. How was he coming? A. He was coming crouched and running.

"Q. What did you do with your gun then? A. Raised it up out of this window and pulled the trigger.

"Q. Mr. Tapley, what did you think, if anything, when you saw him coming toward you this last time? A. I thought he was coming after me.

"Q. What did you think he was going to do? A. I thought he was going to take that gun away from me and kill me or beat me up again."

On cross-examination, we find the following:

"Q. And I believe even then you haven't admitted that you tried to hit him? A. I didn't try to hit him, no.

"Q. You tried not to hit him? A. I just tried to stop him.

"Q. You didn't try to hit him with a bullet? A. No, sir.

"Q. You figured if you would just shoot he would stop? A. Well, I turned him once."

This, we think, raised the issue of self-defense and nothing more. The negative answer to the question, "You didn't try to hit him with a bullet?" cannot be said to take the place of a positive averment that the weapon was not pointed at a vital portion of the body of the deceased at the time it was fired. Appellant declined to say that he intended to miss the deceased. In order to raise the issue claimed, there must be unequivocal testimony that the deadly weapon was pointed in some direction other than directly at the injured party. To say that even though an accused pointed a deadly weapon directly at the injured party and fired the same, but that in doing so he did not intend to kill, would be bordering on an absurdity. We think the testimony here is merely a negative statement such as we described in Royal v. State, 154 Tex. Cr. R. 567, 228 S.W. (2d) 162, and that no such issue of affirmative defense was raised. There is no evidence in the record from any source indicating that the appellant was pointing the weapon in any direction other than directly at the deceased.

We find no reason shown in the bills presented to us why this cause should be reversed, and the same is therefore affirmed.