BERT WADE CHRISTESSON V. STATE

No. 34,015.   January 3, 1962
Motion for Rehearing Overruled February 7, 1962

*Blyth and Norvell,* Clovis, New Mexico, and *Billy Hall,* Littlefield, for appellant.

*Jack Young,* District Attorney, Muleshoe, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is assault with intent to murder; the punishment, seven years.

The prime question in this case is the propriety of the court charging on provoking the difficulty. The 750-page statement of facts will be condensed with that question in mind; that is, was there any evidence in this record to show that appellant, by his own willful act, brought about the necessity of assaulting the injured party and thus deprived himself of his right of self-defense. Appellant did not testify, but offered a number of witnesses in his behalf.

Hartwell, the injured party, and two companions had repaired across the state line to a bar in New Mexico. While there, he met Betty Miller (appellant's ex-wife and a former waitress at the bar in question), who had come from Clovis, New Mexico, with a group of eight people, one of whom was appellant. While appellant was engaged in other matters, Betty went to the bar, where she and Hartwell were drinking and talking when, unfortunately for all concerned, Mrs. Hartwell, who was out looking for her missing husband, entered the bar and observed what was transpiring. Angered at what she saw, Mrs. Hartwell approached Betty and gave her a resounding slap. Betty testified that she would have replied in kind but was restrained.

Following this, both groups left the bar and proceeded to their automobiles. Betty, according to her own testimony, approached the automobile in which the Hartwells were seated and invited Mrs. Hartwell outside. Upon Mrs. Hartwell's refusal, Betty told her that Hartwell on repeated occasions had offered her money to "go with him"; this Hartwell denied. Mrs. Martin, a member of appellant's party, approached the automobile in a belligerent manner, and, in defense of his wife, Hartwell hit her. After this, both automobiles containing the two groups left the bar and drove to a cafe. It was the testimony of those in appellant's group that, while at the cafe, Hartwell said, "There is that s.o.b. and that g.d. slut with him." This was denied by Hartwell, his wife, and Mrs. Venable, the only other person in the automobile. Neither group got out of their respective automobile, and both parties drove away from the cafe, with Hartwell's car in the lead. A short distance away, Mrs. Venable stopped the automobile in which the Hartwells were riding to pick up her husband at a roadside park, and appellant also brought his automobile to a halt, alighted, and struck both Hartwell and the automobile (with the weapon which is described later in this opinion), denting the top and cracking the glass, after which Mrs. Hartwell and her husband hastily fled the scene in the Venable automobile, with appellant in hot pursuit, leaving his passengers afoot on the roadside. Both automobiles came to a

halt at a filling station in Farwell. During the course of this last trip, appellant's automobile "bumped" the one in which Hartwell was riding several times, causing $130.00 in damage to its rear end. At the station, Hartwell, with a railroad type of lantern in his hand, got out of his automobile, and soon thereafter appellant got out of his automobile armed with a flexible club, fabricated from a doubled cable bound together with tape. There is a conflict in the evidence as to whether Hartwell struck the first blow. The lantern was demolished either before or as a result of this first blow. However, an affray did follow in which Hartwell received the injuries which constitute the basis of this prosecution. According to the state's testimony, appellant's companion Martin held Hartwell's wife for a time to prevent her from interceding, and later kicked Hartwell as he was lying on the ground.

The court charged on appellant's right of self-defense against an unlawful attack by Hartwell, based upon the testimony that Hartwell made the first overt act with the lantern. This was a proper submission of the defensive issue raised by the evidence. He then charged on provoking the difficulty. This was predicated upon the evidence concerning the pursuit by appellant from the cafe to the roadside park, his assault with the flexible club at that point, his continued pursuit after the Hartwells left the park, coupled with his act of ramming the rear end of the automobile in which the Hartwells were riding and his act of stopping at the filling station in question and alighting, armed with the weapon heretofore described. This, we have concluded, was a proper submission of the two theories raised by the evidence. See Britton v. State, 95 Texas Cr. Rep. 209, 253 S.W. 519, and Tapley v. State, 158 Texas Cr. Rep. 495, 256 S.W. 2d 583, 585, and cases there cited. Under the evidence, we find no error in the giving of the charge.

Having disposed of the most difficult question in the case, we pass on to the sufficiency of the evidence to support this conviction for assault with intent to murder. Hartwell testified that he was beaten into unconsciousness by means of the flexible cable. Other witnesses testified that he was kicked by appellant and his companion while lying on the ground. It was shown that Hartwell sustained the loss of one tooth and a bridge containing two other teeth; one eyes was closed from swelling; his lips were swollen and he received a painful blow to one kidney; and he was hospitalized for three days. Dr. Spring, who treated Hartwell and to whom the flexible cable was exhibited at the trial, expressed the opinion that it was an instrument which from the manner of

its use was capable of inflicting serious bodily injury, and testified that Hartwell was "severely beaten".

According to the state's witnesses, during his assault on Hartwell, appellant, in answer to his mother's warning that he would go to jail again if he did not stop, said, "I will kill the bastard." At another juncture, when someone in the crowd attempted to call the police, appellant said, "Call the g.d law, I am not scared of them, I have been in the pen before."

We have concluded that the evidence is sufficient to support the conviction and shall discuss the remaining contentions which we view as raising a substantial question. During the closing argument, the prosecutor said, "Bert Christesson is a gangster. His actions show that." The court instructed the jury not to consider this statement. We must determine whether the court erred in declining to grant a mistrial. The nature of the instrument used by appellant is of prime importance. A picture thereof is part of this record. The weapon, a doubled cable bound with tape, does not taper at one end as a whip, and therefore would not be properly usable to discipline animals. Its only possible use, apparent to us, is to inflict injury and is the type that would be fabricated and carried by one planning to engage in an assault upon another person.

Appellant was accompanied by seven companions in his pursuit of Hartwell and his wife, and whenever the automobiles halted appellant struck at Hartwell with this weapon, and one of such blows caused a dent of over a half inch in depth in the top of a sedan. At least one of appellant's companions kicked Hartwell as he lay unconscious on the ground.

Webster's New International Dictionary, 2nd Ed., defines "gang" as a "company of persons acting together for some purpose, usually criminal, or at least not good or respectable". Appellant, accompanied by Martin and six others, pursued Hartwell, assaulted him whenever the opportunity arose, and stated that he intended to kill him. It is difficult to see anything "good or respectable" in such conduct. We have concluded that the prosecutor was warranted in arguing that "his actions" did "show that" he was acting as a member of a gang, and hence "a member of a gang of roughs" (Webster's, supra), i.e., a gangster.

We find no reversible error reflected by the testimony of Hartwell that he felt he was going to be killed by the assault. No objection was made until after the answer had been elicited,

and no motion to withdraw the answer was made; therefore, the error, if any, was not preserved. Matthews v. State, 164 Texas Cr. Rep. 169, 297 S.W. 2d 142.

There was no error in admitting the testimony relating to appellant's res gestae statement that he had been in the "pen" before. Such evidence was held admissible in Carrier v. State, 159 Texas Cr. Rep. 421, 264 S.W. 2d 728.

There was no error in permitting the witness Coffman to testify that after the day charged in the indictment he had a conversation with appellant in which appellant asked him to go talk to Hartwell and offer him a thousand dollars "if he wouldn't push the case or if he would drop it". Booth v. State, 52 Texas Cr. Rep. 452, 108 S.W. 687, and McCormick & Ray, Texas Law of Evidence, Vol. 2, Sec. 1143, p. 33.

We have examined the remaining bills of exception and fail to find error reflected thereby.

Finding no reversible error, the judgment of the trial court is affirmed.