

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

**NO. PD-0666-09**

**JAIME CASAS JUAREZ, JR., Appellant**

**v.**

**THE STATE OF TEXAS**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE TWELFTH COURT OF APPEALS SMITH COUNTY**

**KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. HOLCOMB, J., filed a concurring opinion in which KELLER, P.J., PRICE and JOHNSON, JJ., joined.**

## OPINION

The confession and avoidance doctrine applies to the necessity defense.[1] Therefore, a defendant must admit to the conduct—the act and the culpable mental state[2]—of the charged offense to be entitled to a necessity instruction. Juarez's testimony both admitted

---

1 *See* TEX. PENAL CODE ANN. § 9.22 (Vernon 2003).

2 *See* TEX. PENAL CODE ANN. § 1.07(10) (Vernon 2003).

to and denied the culpable mental state; therefore, the trial judge erred in denying Juarez's request for a necessity instruction. The court of appeals's judgment[3] is affirmed and we remand this case to the trial court.

**Facts**

Shortly before dawn on June 10, 2007, Blair Blanford observed three men dressed in black attempting to break into vehicles in his apartment complex's parking lot. After observing the men rifle through an unlocked car, Blanford called 911. Tyler police Officers J.H. Burge, Noe Balderas, and Steve Black were dispatched to the complex. They left their vehicles outside of the complex and walked in so that they could "sneak up" on the three men and "catch them in the act." Officer Burge saw two of the men inside a car and the third standing beside it, with items from the car strewn on the ground. The officers then yelled, "Stop, police." The men ran, and the officers pursued them. Officer Burge chased Juarez while Officers Balderas and Black chased the other two men.

Officer Burge found Juarez sitting on some steps, sweaty and out of breath. Juarez put his hands in the air, but when Officer Burge tried to handcuff him, he pulled away. Officer Burge grabbed Juarez, and both of them fell to the ground with Juarez facing Officer Burge. Officer Burge ordered Juarez to stop resisting and yelled for help. With Juarez now facing the ground, Officer Burge had both of his hands on Juarez's back to keep him from getting up, but Juarez was pushing up with Officer Burge on his back. Officer Burge did

---

[3] *Juarez v. State*, No. 12-08-00009-CR, 2009 Tex. App. LEXIS 3762, at *11-14 (Tex. App.—Tyler Mar. 25, 2009) (not designated for publication).

not know if Juarez's face went into the ground. He presumed Juarez did not have any trouble breathing because Juarez was saying "foul" things to him. Realizing that no one heard his call for help, Officer Burge tried to radio his location. When Officer Burge removed his right hand from Juarez's back to use his radio, Juarez bit Officer Burge's left index finger. Burge testified that Juarez did this intentionally, knowingly, or recklessly. Officer Burge tried to get Juarez to let go by standing up and hitting him, but Juarez stood up and refused to let Officer Burge's finger go. Finally, when Officer Black arrived and hit Juarez, Juarez released Officer Burge's finger. Officer Black testified that, based on his observations, Juarez's biting of Officer Burge's finger was intentional, knowing, or reckless. Juarez continued to resist arrest by wrestling with and hitting Officer Black. Once Officer Balderas arrived, he and Officer Black were finally able to subdue Juarez and arrest him. Juarez remained belligerent and refused to walk to the patrol car.

Officer Burge was transported to the hospital. He testified that his trigger finger had been lacerated and that it took four weeks to heal. The treating physician described the wound to Burge's left index finger as "significant" and capable of causing permanent disfigurement and protracted loss or impairment.

Juarez testified that he was with his cousin and another man on June 10th. He was the lookout while his cousin and the other man burglarized unlocked vehicles. His cousin told him that someone was peeking around the corner and looking at them, so they took off running. Juarez testified that someone yelled "Stop," not "Stop, police"; therefore, he did

not know that he was being pursued by the police. He said that someone jumped on him and slammed him to the ground while he was sitting and trying to catch his breath. He told the person to get off of him. When he heard the radio, he realized that a police officer was on top of him. His mouth was in the dirt, and the officer was pushing his head in the dirt. He was inhaling dirt and felt like he was suffocating. He got the officer's finger in his mouth somehow and bit down to get the officer off of him. "I got his finger in my mouth somehow, and I just bit down to get him off of me, because I felt like I was going to die . . . ." When the officer got up, Juarez got up with him and saw two other officers coming around the corner. He put his hands behind his back and lay down. The officers then began to hit him. On direct-examination, Juarez testified that he did not intend to bite Officer Burge and that he was just concerned for his life. On cross-examination, Juarez testified that he did not intentionally, knowingly, or recklessly bite Officer Burge's finger. He claimed that he did it by accident; he bit down and let it go.

Juarez was charged with aggravated assault on a peace officer with a deadly weapon. Juarez pled not guilty and requested a jury trial. At the guilt-phase charge conference, Juarez requested an instruction on the necessity defense,[4] claiming that he had raised the issue. The trial judge denied the request because, among other things, Juarez denied the culpable mental state when he denied biting Officer Burge intentionally, knowingly, or recklessly. The jury later found Juarez guilty and sentenced him to fifty years' confinement and assessed a $5,000

[4] *See* TEX. PENAL CODE ANN. §§ 2.03, 9.02, 9.22 (Vernon 2003).

fine.

## Court of Appeals

Juarez appealed the trial judge's refusal to instruct the jury on necessity.[5] The State argued that Juarez was not entitled to the instruction because he refused to admit to all of the elements of the offense, in particular, the culpable mental state, which is a prerequisite for a necessity instruction.[6] The Tyler Court of Appeals disagreed and held that a defendant need admit only the prohibited act, not the applicable mental state accompanying the prohibited conduct.[7] The court determined that Juarez's testimony admitting to the act (i.e., the biting), even if by accident, was sufficient to entitle him to a necessity instruction.[8] The court then held that the error was harmful.[9] As a result, it reversed the trial court's judgment and remanded the case for a new trial.[10]

## State's Petition for Discretionary Review

We granted the State's petition for discretionary review to determine whether a defendant is required to admit to all of the elements of a charged offense, including the applicable culpable mental state, to be entitled to a necessity defense instruction.

---

5 2009 Tex. App. LEXIS 3762, at *1.

6 *Id.* at *7.

7 *Id.* at *10.

8 *Id.* at *11.

9 *Id.* at *17-18.

10 *Id.* at *18.

The State contends that caselaw establishes that a defendant is required to admit to all elements of an offense before offering a defense like necessity. Because Juarez denied biting Officer Burge intentionally, knowingly, or recklessly, the State contends that his testimony negated only the *mens rea* element of the offense.

**Analysis**

This case involves the long-standing legal doctrine of confession and avoidance.[11] We have defined the doctrine's requirements in two distinct ways. First, we have said that a defendant must admit to all elements of a charged offense before the defendant will be entitled to a defensive instruction.[12] Alternatively, we have said that a defensive instruction is required when "the defendant's defensive evidence essentially admits to every element of the offense, including the culpable mental state . . . ."[13] Over the years, we have applied the doctrine in cases where the defendant asserted necessity,[14] self-defense,[15] or the Good Samaritan defense.[16] But we have observed that the doctrine does not apply when the

---

[11] *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007); *Kimbro v. State*, 157 Tex. Crim. 438, 440 (Tex. Crim. App. 1952); *see e.g., Canon v. State*, 128 S.W. 141, 143 (Tex. Crim. App. 1910) (noting that the defendant's confession to police was in the nature of a plea of confession and avoidance because the defendant asserted self-defense).

[12] *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999).

[13] *Shaw*, 243 S.W.3d at 659.

[14] *Young*, 991 S.W.2d at 838.

[15] *Ex parte Nailor*, 149 S.W.3d 125, 132-34 (Tex. Crim. App. 2004).

[16] *Shaw*, 243 S.W.3d at 659.

defensive issue, by its terms, negates the culpable mental state.[17] The affirmative defense of mistake of fact is one example.[18]

The confession and avoidance doctrine originated in English common law during the Fourteenth Century in relation to civil-case pleading requirements.[19] A justification, used to challenge a plaintiff's specific allegation, was asserted in a special traverse in the form of a plea of confession and avoidance.[20] One scholar has explained the common law civil pleading process as follows:

> Under common law pleading requirements, the parties pleaded against each other until they joined issue on a question of law or fact. Each time one party pleaded, the other had an opportunity to demur, to deny the truth of his opponent's allegations, or to introduce new matter and thus to confess and avoid the claim. In the earliest days of common law, unlike our modern era, denial and confession and avoidance were strict alternatives. The common law's nurturance of special pleas made contingent claims common. Parties could, and frequently did, confess and avoid the pleas of their opponents.[21]

---

[17] *Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999) (the mistake of fact, by its terms, negates the culpable mental state); *Willis v. State*, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990) (the good faith purchase defense may, by its terms, negate the culpable mental state); *Jackson v. State*, 646 S.W.2d 225, 227 (Tex. Crim. App. 1983) (the mistake of fact defense, by its terms, negates the culpable mental state).

[18] *Granger*, 3 S.W.3d at 41; *Jackson*, 646 S.W.2d at 227.

[19] Stephen G. Gilles, *Inevitable Accident in Classical English Tort Law*, 43 EMORY L.J. 575, 617-18 (1994).

[20] *Id.*

[21] Yuval Sinai, *The Doctrine of Affirmative Defenses in Civil Cases—Between Common Law and Jewish Law*, 34 N.C.J. INT'L L. & COMM. REG. 111, 117-18 (2008).

Today, the doctrine still exists in our state civil-law jurisprudence.[22]

The doctrine of confession and avoidance appears to have been formally introduced into our criminal-law jurisprudence in 1952, in *Kimbro v. State*.[23] In that case, we rejected the appellant's claim that drinking a half pint of whiskey after he was arrested constituted an affirmative defense to driving while intoxicated.[24] We explained that the defendant's claim constituted a denial of the charge, and citing a New York civil case, we said: "an affirmative defense was defined, in part, as meaning a new matter, *assuming the complaint to be true*, which constitutes a defense to it."[25]

In general, our application of the confession and avoidance doctrine over the past sixty years has been somewhat inconsistent. In numerous cases, we have held that a defendant who denied one element of a charged offense was not entitled to a defensive issue instruction.[26] In those cases, we noted that the defendants mounted a defensive theory based

---

[22] TEX. R. CIV. P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . any other matter constituting an avoidance or affirmative defense"); *see e.g., Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 798 (Tex. 2008); *Woods v. State*, 769 S.W.2d 515, 517-18 (Tex. 1988).

[23] 157 Tex. Crim. at 440; *see also Fitzgerald v. State*, 782 S.W.2d 876, 884 (Tex. Crim. App. 1990) ("Necessity is a traditional defense at common law, and is now included in most revised penal codes.").

[24] *Kimbro*, 157 Tex. Crim. 440.

[25] *Id.* (citing *Carter v. The Eighth Ward Bank*, 67 N.Y.S. 300 (N.Y. S.Ct. 1900)) (emphasis in original).

[26] *Shaw*, 243 S.W.3d at 659; *Ex parte Nailor*, 149 S.W.3d at 132-33; *Giesberg v. State*, 984 S.W.2d 245, 249-50 (Tex. Crim. App. 1998); *Sanders v. State*, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986); *Hall v. State*, 402 S.W.2d 752, 754-55 (Tex. Crim. App.

on trial strategy designed to negate only a specific element of the charged offense.[27] For instance, in *Royal v. State*, we held that the appellant's testimony that he did not intend to kill the victim did not constitute an affirmative defense.[28] We stated that the appellant's testimony amounted to a denial of the State's allegation that he intended to kill the victim.[29] We have reached similar decisions in cases where the defendant denied both the *actus rea* and the *mens rea* elements of an offense.[30] But in a handful of cases we have ignored the confession and avoidance doctrine altogether.[31] In *Martinez v. State*, for instance, we held that the appellant was entitled to an instruction on self-defense even though he claimed that he did not intend to kill the victim.[32]

---

1966); *DeHam v. State*, 389 S.W.2d 955, 956 (Tex. Crim. App. 1965); *Tapley v. State*, 256 S.W.2d 583, 586 (Tex. Crim. App. 1953); *Kimbro*, 157 Tex. Crim. 440; *Royal v. State*, 228 S.W.2d 162, 163 (Tex. Crim. App. 1950); *Sharp v. State*, 199 S.W.2d 159, 160 (Tex. Crim. App. 1947) (on reh'g).

[27] *Shaw*, 243 S.W.3d at 659; *Ex parte Nailor*, 149 S.W.3d at 132-33; *Giesberg*, 984 S.W.2d at 249-50; *Sanders*, 707 S.W.2d at 81; *Hall*, 402 S.W.2d at 754-55; *DeHam*, 389 S.W.2d at 956; *Tapley*, 256 S.W.2d at 586; *Kimbro*, 157 Tex. Crim. 440; *Royal*, 228 S.W.2d at 163; *Sharp*, 199 S.W.2d at 160.

[28] 228 S.W.2d at 163.

[29] *Id.*

[30] *See e.g., Ex parte Nailor*, 149 S.W.3d at 133; *Young*, 991 S.W.2d at 838; *Sanders*, 707 S.W.2d at 81; *DeHam*, 389 S.W.2d at 956.

[31] *Woodfox v. State*, 742 S.W.2d 408, 410 (Tex. Crim. App. 1987); *Smith v. State*, 676 S.W.2d 584, 585-87 (Tex. Crim. App. 1984); *Torres v. State*, 585 S.W.2d 746, 748-50 (Tex. Crim. App. 1979).

[32] 775 S.W.2d 645, 647 (Tex. Crim. App. 1989).

After examining the history of the confession and avoidance doctrine, we will now consider its current application to the necessity defense. The defense of necessity[33] is defined in Penal Code Section 9.22 and states:

> Conduct is justified if:
> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
> (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
> (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.[34]

Conduct, in turn, is defined in Penal Code Section 1.07(10) as "an act or omission and its accompanying mental state."[35]

A survey of our caselaw since the enactment of the Penal Code in 1974 establishes that we have interpreted the necessity defense,[36] as defined in Section 9.22, to embrace the confession and avoidance doctrine.[37] And although our application of the doctrine has been

---

[33] TEX. PENAL CODE ANN. § 9.02 (Vernon 2003) ("It is a defense to prosecution that the conduct in question is justified under" Chapter 9 of the Texas Penal Code.).

[34] TEX. PENAL CODE ANN. § 9.22.

[35] TEX. PENAL CODE ANN. § 1.07(10).

[36] *Added by* Acts 1973, 63rd Leg., ch. 399, § 1, effective Jan. 1, 1974.

[37] *Ex parte Nailor*, 149 S.W.3d at 133; *Bowen v. State*, 162 S.W.3d 226, 230 (Tex. Crim. App. 2005) (observing that the defendant's admission to the conduct "satisfied the judicially imposed prerequisite to request a necessity instruction"); *Young*, 991 S.W.2d at 839; *Vasquez v. State*, 830 S.W.2d 948, 950-51 (Tex. Crim. App. 1992) (observing that the defendant admitted to the conduct and that his testimony raised the necessity defense); *Thomas v. State*, 678 S.W.2d 82, 85 (Tex. Crim. App. 1984) (recognizing that the

inconsistent at times, we have applied in it in all of our decisions involving the necessity defense.[38] The Legislature has amended the statute since its enactment in 1973,[39] but it has never overruled our determination about the application of the confession and avoidance doctrine.[40] In the absence of any contrary legislative command, we will presume that the Legislature has approved our determination that Section 9.22 embraces the confession and avoidance doctrine.[41] As a result, we hold that the court of appeals was incorrect when it concluded that Juarez's admission to the act was enough to satisfy the confession and avoidance doctrine. As our decisions make clear, the doctrine requires an admission to the conduct, which includes both the act or omission and the requisite mental state.

In holding that the confession and avoidance doctrine applies to the necessity defense,

---

confession and avoidance doctrine applied to one of the State's theories of guilt because of the defendant's denial of the proscribed mental state); *see also Gilbert v. State*, No. PD-1645-08, 2010 Tex. Crim. App. Unpub. LEXIS 99, at *14 (Tex. Crim. App. Feb. 10, 2010) (not designated for publication) (observing that the defendant's testimony sufficiently admitted to the conduct).

[38] *Ex parte Nailor*, 149 S.W.3d at 133; *Bowen*, 162 S.W.3d at 230; *Young*, 991 S.W.2d at 839; *Vasquez*, 830 S.W.2d at 950-51; *Thomas*, 678 S.W.2d at 85; *Gilbert*, No. PD-1645-08, slip op. at *9.

[39] *Amended by* Acts 1993, 73rd Leg., ch. 900, § 1.01, effective Sept. 1, 1994.

[40] *See State v. Colyandro*, 233 S.W.3d 870, 878 (Tex. Crim. App. 2007).

[41] *See id.* ("'Certainly when a legislature *reenacts* a law using the same terms that have been judicially construed in a particular manner, one may reasonably infer that the legislature approved of the judicial interpretation. There is considerably less force (though still some) to the argument that if a legislature does not agree with the judicial interpretation of the words or meaning of a statute, the legislature would surely have immediately changed the statute.'") (emphasis in original) (citing *State v. Medrano*, 67 S.W.3d 892, 902 (Tex. Crim. App. 2002)).

we would be remiss if we failed to acknowledge that the doctrine conflicts with Section 2.03(c)'s general rule governing when a defensive instruction is required. Section 2.03(c) states: "The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense."[42] The defendant bears the burden of showing that each element of the defense has been satisfied.[43] In *Shaw*, we interpreted Section 2.03(c) to incorporate a second long-standing common law defensive issue doctrine—that a trial judge must, upon a defendant's proper request, instruct the jury on every defensive issue raised by the evidence without regard to its source or strength.[44] Under this doctrine, it is of no consequence "whether such evidence or testimony was produced by the prosecution or the accused, or whether such defensive evidence or testimony might be strong, weak, unimpeached, or contradicted."[45]

The confession and avoidance doctrine's requirement that a defendant admit to the conduct conflicts with Section 2.03(c)'s general rule that a defense is supported by the evidence if there is evidence from any source on each element of the defense. However, this conflict does not disturb our determination that Section 9.22 embraces the confession and avoidance doctrine. When interpreting statutes that are *in pari materia* and construed

---

[42] TEX. PENAL CODE ANN. § 2.03(c) (Vernon 2003); *see also* TEX. PENAL CODE ANN. § 2.04(c) (Vernon 2003).

[43] *Shaw*, 243 S.W.3d at 657-58.

[44] *Id.*; *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984).

[45] *Booth*, 679 S.W.2d at 500.

together, both are given effect with the special governing over the general in the event of a conflict.[46] In this instance, Section 9.22's admission requirement governs the specific defensive issue of necessity and therefore trumps Section 2.03(c)'s general rule.

Turning to case before us, we conclude that Juarez was entitled to a necessity instruction under the facts here. This case is distinguishable from our previous decisions holding that a defendant's denial of an element of the prohibited conduct constitutes a challenge to the elements of the charged offense (or conduct) and therefore does not require a necessity defense instruction.[47] Though Juarez denied biting Officer Burge intentionally, knowingly, or recklessly he had also admitted that he bit Officer Burge to get Officer Burge off of him because Officer Burge was causing him to suffocate. Juarez's mental state—that the biting was done either intentionally, knowingly, or recklessly—could have reasonably been inferred from his testimony about the circumstances surrounding his conduct.[48] Thus, the confession and avoidance doctrine was satisfied because Juarez had admitted to both the act and the requisite mental state.[49] The trial judge was therefore required to instruct the jury

---

[46] *Alejos v. State*, 555 S.W.2d 444, 449-50 (Tex. Crim. App. 1977) (on reh'g).

[47] *See e.g.*, *Shaw*, 243 S.W.3d at 659; *Ex parte Nailor*, 149 S.W.3d at 132-33.

[48] *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) ("Mental states are almost always inferred from acts and words."); *see e.g., Hardesty v. State*, 656 S.W.2d 73, 78 (Tex. Crim. App. 1983) (a factfinder may draw an inference of guilt from the circumstance of flight); *Jones v. State*, 481 S.W.2d 900, 902 (Tex. Crim. App. 1972) (same).

[49] *See Granger*, 3 S.W.3d at 39 (whether a defendant's mistaken belief was reasonable for the mistake of fact defense is a question for the jury, not the trial judge); *Hayes v. State*, 728 S.W.2d 804, 808 (Tex. Crim. App. 1987) (opinion on reh'g) (whether

on the necessity defense. It was then within the jury's province as the factfinder to determine whether Juarez's conduct was excused under the necessity defense.

Next, as discussed above, we have rendered two different interpretations of the confession and avoidance doctrine's requirements. Historically in necessity defense cases, we have said that a defendant must admit to the conduct.[50] We made this assertion in cases in which the defendant testified and explicitly denied the conduct, either by denying the act or the culpable mental state or both.[51] But in our most recent discussion of the doctrine in *Shaw v. State*, we expanded the admission requirement and said that a defendant's defensive evidence must admit to the conduct.[52] Whether the confession and avoidance doctrine requires the former or the latter is not necessary to our resolution of this case because Juarez testified and a factfinder could reasonably infer from his testimony that he bit Officer Burge intentionally, knowingly or recklessly. We will leave it for a future necessity defense case to decide whether the confession and avoidance doctrine requires a defendant's own admission.

On a final note, it is necessary to explain how our recent decision in *Gilbert v. State*

---

a defendant's belief was reasonable for a deadly force instruction is a fact-issue for the jury, not the trial judge).

[50] *Ex parte Nailor*, 149 S.W.3d at 133; *Bowen*, 162 S.W.3d at 230; *Young*, 991 S.W.2d at 839; *Vasquez*, 830 S.W.2d at 950-51; *Thomas*, 678 S.W.2d at 85.

[51] *Ex parte Nailor*, 149 S.W.3d at 133; *Bowen*, 162 S.W.3d at 230; *Young*, 991 S.W.2d at 839; *Vasquez*, 830 S.W.2d at 950-51; *Thomas*, 678 S.W.2d at 85.

[52] *Shaw*, 243 S.W.3d at 659.

does not render the issue in this case moot. In *Gilbert*, we said that the necessity defense "turns on a personal choice made by the actor" and that it does not apply when an individual's decision to act is coerced by another.[53] Here, Officer Burge did nothing to coerce Juarez. Officer Burge tried to prevent Juarez's escape and attempted to control him so that he could lawfully arrest him. Thus, even if Juarez had admitted to the conduct, *Gilbert* does not bar the application of the necessity defense under the facts of this case.

## Conclusion

The doctrine of confession and avoidance applies to the Penal Code's necessity defense. As a result, a defendant cannot flatly deny the charged conduct—the act or omission and the applicable culpable mental state. Because it can reasonably be inferred from Juarez's testimony that he intentionally, knowingly, or recklessly bit Officer Burge, the trial judge erred in refusing Juarez's request for a necessity instruction. We affirm the court of appeals's judgment because it found that the trial judge's error was harmful[54] and we did not grant review to evaluate its harm analysis. We remand this case to the trial court.

DATE DELIVERED: March 31, 2010
PUBLISH

---

[53] *Gilbert*, 2010 Tex. Crim. App. Unpub. LEXIS 99, at *13-14.

[54] *Juarez*, 2009 Tex. App. LEXIS 3762, at *16-18.