## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH
### NO. 02-09-00388-CR


RIGOBERTO CEDILLO                                                          APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

A jury convicted Appellant Rigoberto Cedillo of misdemeanor assault, bodily injury to a family member.[2] The trial court sentenced Appellant to ninety

----------

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2010). The affirmative family-violence finding entered in this case does not affect Appellant's sentence because the State did not allege that he had previously been convicted of assault–family violence. *See id.* § 22.01(b)(2)(A).

days in the county jail. In one point, Appellant contends that the evidence is insufficient to support the jury's guilty verdict. We affirm.

## II. Factual and Procedural Background

On May 6, 2009, the complainant Jose Alfaro and two of his adult stepsons—Appellant and Eduardo Escamilla—were drinking beer in Alfaro's garage. Alfaro began drinking at approximately 2:00 p.m.; Escamilla (who lived across the street and two houses down) joined him in the early evening; and Appellant (who lived with Alfaro) joined them around midnight. Alfaro testified that he was intoxicated that evening but that the three men were talking and drinking together "just fine." At some point, Alfaro told Appellant that he needed to start paying rent. When Appellant responded that he did not have any money because he had sent it all to his father in Mexico, Alfaro stated that "that wasn't right" and that he needed to help pay the bills before sending money to his father.

When the prosecutor asked Alfaro about the broken nose that he had sustained that night, he initially denied knowing exactly what had happened or who had hit him.[3] Ultimately, however, Alfaro testified that Escamilla had been standing off to the side while Alfaro and Appellant talked and that Appellant hit him in the face, knocking him to the ground. Alfaro testified that he did not think that he had hit or attempted to hit Appellant. He further testified that the injury to his nose "hurt" and "was bad" but that it had since healed.

---

[3]Alfaro signed an affidavit of non-prosecution prior to trial.

Police Sergeants Willie Easley and Chris Herbert responded to Alfaro's residence in the early morning hours of May 7, 2009. The sergeants found Alfaro outside on the ground, unconscious, with a bloody, severely broken nose.[4] Sergeant Easley testified that, based on his experience and in his opinion, Alfaro sustained a "direct punch" that could not have been inflicted accidentally.

Appellant's wife, Gloria, was frantic, crying, and upset, and she repeatedly walked and pointed toward a house diagonally across the street. Sergeants Easley and Herbert approached the identified house, and Officer Jason East arrived and joined them. While Sergeant Easley remained outside with three individuals standing in the front yard, Sergeant Herbert and Officer East knocked on the front door, entered the home with their weapons drawn, and found Appellant hiding under a bed.

When Appellant emerged, he claimed that Alfaro had "punched" him and that he had defended himself by returning a single punch. Although Sergeant Herbert closely examined Appellant's face, he did not see any injuries. When asked if Appellant had *any* injuries, Sergeant Herbert recounted Appellant's statement that he had dislocated—and put back into place—a finger and that he may have broken his hand. Based on Sergeant Herbert's experience, however, this was an "offensive type wound, not necessarily a defensive type wound."

---

[4]The medical records introduced by the State provided in part that Alfaro suffered from a nasal fracture when he was admitted to the hospital the day of the offense.

While acknowledging that a dislocated finger could be the result of an offensive or defensive injury, Sergeant Herbert testified that Appellant's injury would have resulted from him attacking someone rather than from someone attacking him. Sergeant Easley testified that he did not see any marks on Appellant that indicated that Alfaro had hit him.

Eduardo Escamilla testified for the defense that he and Alfaro were intoxicated when Appellant arrived, that Alfaro was "already feeling good" and "getting rowdy," and that Appellant was sober. According to Escamilla, while Appellant and Alfaro were talking, Appellant "took one step back," Alfaro "reached out to swing," and Appellant "just reacted faster and just hit him one good time in the nose." When defense counsel asked if Alfaro "was swinging" at Appellant, Escamilla stated, "[H]e sure did that attempt. You know, but of course, if you're drinking, you're a little bit more slower." Escamilla stated that Appellant's punch was not intentional or accidental but rather "more like [a] reflex. It's just the way we are. We've been raised by a boxer." In Escamilla's opinion, Appellant was defending himself. On cross-examination, Escamilla explained that Alfaro took a swing at Appellant but "stopped in the middle of it when he was reaching out." Escamilla acknowledged that he had told the responding officers that he had not seen what happened between Alfaro and Appellant.

## III. Sufficiency of the Evidence

In one point, Appellant contends that the evidence is insufficient to support the jury's guilty verdict. Specifically, he argues that the jury found him guilty even though "each witness related that he was acting in self-defense."

A defendant has the initial burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)). Once evidence is produced, the burden shifts to the State to disprove the defense beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913. This burden of persuasion does not require the State to produce evidence to refute the self-defense claim, but requires only that it prove its case beyond a reasonable doubt. *Id.* Self-defense is an issue of fact to be determined by the jury, which is free to accept or reject the defensive issue. *Id.* at 913–14. The fact finder is the sole judge of the weight and credibility of the evidence. *Brown v.* State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). A jury's guilty verdict is an implicit finding rejecting the defendant's self-defense theory. *Saxton,.* 804 S.W.2d at 914.

In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 912

5

(Tex. Crim. App. 2010) ("[T]he *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."). Thus, in reviewing the sufficiency of the evidence to support the jury's rejection of Appellant's self-defense theory, we examine all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against Appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914 (citing *Jackson,* 443 U.S. 307)*.*

A person commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code. Ann. § 22.01(a)(1). The State's indictment alleged in relevant part that Appellant "intentionally or knowingly cause[d] bodily injury to Jose Alfaro, a member of the defendant's family or household, by striking him with [Appellant's] hand."[5] The court's charge instructed the jury to find Appellant guilty if it found the elements of the offense as charged in the information.

---

[5]The court instructed the jury that "A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result." *See* Tex. Penal Code Ann. § 6.03(a) (Vernon 2003). The court also instructed that "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *See id.* § 6.03(b).

The court's charge also instructed the jury on self-defense. *See id.* § 9.31(a) (Vernon Supp. 2010).[6] The charge instructed the jury to acquit Appellant if it found—or if it had a reasonable doubt—that, in striking Alfaro with his hand, Appellant reasonably believed that his use of force was immediately necessary to protect himself against Alfaro's use or attempted use of unlawful force. *See id.* The charge defined "reasonable belief" as "a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant." *See id.* § 1.07(a)(42) (Vernon Supp. 2010).

Based on the evidence, a rational jury could have found beyond a reasonable doubt that (1) Appellant assaulted the victim and that (2) his use of force was not justified. Both parties presented evidence that Appellant caused bodily injury to Alfaro by striking him with his hand. The jury could have inferred Appellant's mental state—that he committed the assault either intentionally or knowingly—from his acts, conduct, remarks, and the surrounding circumstances. *See Juarez v. State*, 308 S.W.3d 398, 405 (Tex. Crim. App. 2010) (citing *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998)). Sergeant Easley testified that Alfaro's broken nose was one of the worst he had ever seen and that it could not have been inflicted accidentally. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (holding that intent can be inferred from the extent of the

---

[6]"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a).

complainant's injuries). Further, the jury was free to draw an inference of guilt from Appellant's conduct in fleeing the scene and hiding from the police under a bed. *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) (noting that "[e]vidence of flight evinces a consciousness of guilt").

Additionally, the jury could have reasonably believed Alfaro's testimony that he never attempted to hit Appellant. Alternatively, the jury could have found that Appellant failed to prove that he reasonably believed that his use of force was immediately necessary to protect himself. Despite Appellant's claims at the time of the offense that Alfaro had punched him, none of the responding officers saw any injuries to support Appellant's claim. Moreover, Appellant's own defense witness, Escamilla, testified that an intoxicated Alfaro merely attempted to swing at Appellant but that he "stopped in the middle of it when he was reaching out." Indeed, the jury could have determined that Appellant's statement (to the officers) and Escamilla's testimony that Appellant was defending himself were conclusory and did not address Appellant's state of mind—*i.e.* that Appellant put on no evidence that he reasonably believed force was immediately necessary to protect himself.

Viewing the evidence in the light most favorable to the verdict, we hold that the evidence is sufficient to support both the jury's finding of guilt and its rejection of Appellant's self-defense claim. We overrule Appellant's sole point.

8

## IV. Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 10, 2011