02-09-388-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00388-CR

 

 


 
 
 Rigoberto Cedillo
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

----------

 

FROM County Criminal Court No. 5
OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. Introduction

A
jury convicted Appellant Rigoberto Cedillo of misdemeanor assault, bodily
injury to a family member.[2]  The trial court sentenced Appellant to ninety
days in the county jail.  In one point,
Appellant contends that the evidence is insufficient to support the jury’s
guilty verdict.  We affirm.

II. Factual and Procedural Background

On
May 6, 2009, the complainant Jose Alfaro and two of his adult
stepsons—Appellant and Eduardo Escamilla—were drinking beer in Alfaro’s
garage.  Alfaro began drinking at
approximately 2:00 p.m.; Escamilla (who lived across the street and two houses
down) joined him in the early evening; and Appellant (who lived with Alfaro)
joined them around midnight.  Alfaro
testified that he was intoxicated that evening but that the three men were
talking and drinking together “just fine.” 
At some point, Alfaro told Appellant that he needed to start paying
rent.  When Appellant responded that he
did not have any money because he had sent it all to his father in Mexico,
Alfaro stated that “that wasn’t right” and that he needed to help pay the bills
before sending money to his father.

When
the prosecutor asked Alfaro about the broken nose that he had sustained that
night, he initially denied knowing exactly what had happened or who had hit
him.[3]  Ultimately, however, Alfaro testified that
Escamilla had been standing off to the side while Alfaro and Appellant talked
and that Appellant hit him in the face, knocking him to the ground.  Alfaro testified that he did not think that he
had hit or attempted to hit Appellant. 
He further testified that the injury to his nose “hurt” and “was bad”
but that it had since healed.

Police
Sergeants Willie Easley and Chris Herbert responded to Alfaro’s residence in
the early morning hours of May 7, 2009. 
The sergeants found Alfaro outside on the ground, unconscious, with a
bloody, severely broken nose.[4] Sergeant
Easley testified that, based on his experience and in his opinion, Alfaro
sustained a “direct punch” that could not have been inflicted accidentally.

Appellant’s
wife, Gloria, was frantic, crying, and upset, and she repeatedly walked and
pointed toward a house diagonally across the street.  Sergeants Easley and Herbert approached the
identified house, and Officer Jason East arrived and joined them.  While Sergeant Easley remained outside with
three individuals standing in the front yard, Sergeant Herbert and Officer East
knocked on the front door, entered the home with their weapons drawn, and found
Appellant hiding under a bed.

When
Appellant emerged, he claimed that Alfaro had “punched” him and that he had
defended himself by returning a single punch. 
Although Sergeant Herbert closely examined Appellant’s face, he did not
see any injuries.  When asked if
Appellant had any injuries, Sergeant
Herbert recounted Appellant’s statement that he had dislocated—and put back
into place—a finger and that he may have broken his hand.  Based on Sergeant Herbert’s experience,
however, this was an “offensive type wound, not necessarily a defensive type
wound.”  While acknowledging that a
dislocated finger could be the result of an offensive or defensive injury,
Sergeant Herbert testified that Appellant’s injury would have resulted from him
attacking someone rather than from someone attacking him.  Sergeant Easley testified that he did not see
any marks on Appellant that indicated that Alfaro had hit him.

Eduardo
Escamilla testified for the defense that he and Alfaro were intoxicated when
Appellant arrived, that Alfaro was “already feeling good” and “getting rowdy,”
and that Appellant was sober.  According
to Escamilla, while Appellant and Alfaro were talking, Appellant “took one step
back,” Alfaro “reached out to swing,” and Appellant “just reacted faster and just
hit him one good time in the nose.”  When
defense counsel asked if Alfaro “was swinging” at Appellant, Escamilla stated,
“[H]e sure did that attempt.  You know,
but of course, if you’re drinking, you’re a little bit more
slower.”  Escamilla stated that
Appellant’s punch was not intentional or accidental but rather “more like [a]
reflex.  It’s just the way we are.  We’ve been raised by a boxer.”  In Escamilla’s opinion, Appellant was
defending himself.  On cross-examination,
Escamilla explained that Alfaro took a swing at Appellant but “stopped in the
middle of it when he was reaching out.” 
Escamilla acknowledged that he had told the responding officers that he
had not seen what happened between Alfaro and Appellant.

III.
Sufficiency of the Evidence

In
one point, Appellant contends that the evidence is insufficient to support the
jury’s guilty verdict.  Specifically, he
argues that the jury found him guilty even though “each witness related that he
was acting in self-defense.” 

A
defendant has the initial burden of producing some evidence to support a claim
of self-defense.  Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing
Saxton v. State, 804 S.W.2d 910, 913
(Tex. Crim. App. 1991)).  Once evidence
is produced, the burden shifts to the State to disprove the defense beyond a
reasonable doubt.  Saxton, 804 S.W.2d at 913.  This burden of persuasion does not require
the State to produce evidence to refute the self-defense claim, but requires
only that it prove its case beyond a reasonable doubt.  Id.  Self-defense is an issue of fact to be
determined by the jury, which is free to accept or reject the defensive
issue.  Id. at 913–14.  The fact finder is the sole judge of the
weight and credibility of the evidence.  Brown v. State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008), cert. denied,
129 S. Ct. 2075 (2009).  A jury’s guilty
verdict is an implicit finding rejecting the defendant’s self-defense
theory.  Saxton,. 804 S.W.2d at
914.

In
reviewing the sufficiency of the evidence to support a conviction, we view all
of the evidence in the light most favorable to the prosecution in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010) (“[T]he Jackson v.
Virginia standard is the only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”).  Thus, in reviewing the
sufficiency of the evidence to support the jury’s rejection of Appellant’s
self-defense theory, we examine all the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense and also could have found against
Appellant on the self-defense issue beyond a reasonable doubt.  Saxton,
804 S.W.2d at 914 (citing Jackson, 443 U.S. 307).

          A person commits an assault if he
intentionally, knowingly, or recklessly causes bodily injury to another.  Tex. Penal Code.
Ann.  § 22.01(a)(1).  The State’s indictment alleged in relevant
part that Appellant “intentionally or knowingly cause[d] bodily injury to Jose
Alfaro, a member of the defendant’s family or household, by striking him with
[Appellant’s] hand.”[5]  The court’s charge instructed the jury to
find Appellant guilty if it found the elements of the offense as charged in the
information.

The
court’s charge also instructed the jury on self-defense.  See id.
§ 9.31(a)
(Vernon Supp. 2010).[6]  The charge instructed the jury to acquit
Appellant if it found—or if it had a reasonable doubt—that, in striking Alfaro
with his hand, Appellant reasonably believed that his use of force was
immediately necessary to protect himself against Alfaro’s use or attempted use
of unlawful force.  See id.  The charge defined
“reasonable belief” as “a belief that would be held by an ordinary and prudent
person in the same circumstances as the defendant.”  See id.
'
1.07(a)(42) (Vernon Supp. 2010).

Based
on the evidence, a rational jury could have found beyond a reasonable doubt
that (1) Appellant assaulted the victim and that (2) his use of force was not justified.  Both parties presented evidence that
Appellant caused bodily injury to Alfaro by striking him with his hand.  The jury could have inferred Appellant’s
mental state—that he committed the assault either intentionally or
knowingly—from his acts, conduct, remarks, and the surrounding
circumstances.  See Juarez v. State, 308 S.W.3d 398, 405 (Tex. Crim. App. 2010)
(citing Moore v. State, 969 S.W.2d 4,
10 (Tex. Crim. App. 1998)).  Sergeant
Easley testified that Alfaro’s broken nose was one of the worst he had ever
seen and that it could not have been inflicted accidentally.  See Patrick
v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (holding that intent
can be inferred from the extent of the complainant’s injuries).  Further, the jury was free to draw an
inference of guilt from Appellant’s conduct in fleeing the scene and hiding
from the police under a bed.  See Clay v. State, 240 S.W.3d 895, 905
n.11 (Tex. Crim. App. 2007) (noting that “[e]vidence of flight evinces a
consciousness of guilt”).

Additionally,
the jury could have reasonably believed Alfaro’s testimony that he never
attempted to hit Appellant. 
Alternatively, the jury could have found that Appellant failed to prove
that he reasonably believed that his use of force was immediately necessary to
protect himself.  Despite Appellant’s
claims at the time of the offense that Alfaro had punched him, none of the
responding officers saw any injuries to support Appellant’s claim.  Moreover, Appellant’s own defense witness, Escamilla,
testified that an intoxicated Alfaro merely attempted to swing at Appellant but
that he “stopped in the middle of it when he was reaching out.”  Indeed, the jury could have determined that
Appellant’s statement (to the officers) and Escamilla’s testimony that
Appellant was defending himself were conclusory and did not address Appellant’s
state of mind—i.e. that Appellant put
on no evidence that he reasonably believed force was immediately necessary to
protect himself.

          Viewing the evidence in the light most
favorable to the verdict, we hold that the evidence is sufficient to support
both the jury’s finding of guilt and its rejection of Appellant’s self-defense
claim.  We overrule Appellant’s sole
point.  

IV.  Conclusion

          Having overruled Appellant’s sole
point, we affirm the trial court’s judgment. 

 

 

ANNE
GARDNER
JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 10, 2011











          [1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. § 22.01(a)(1)
(Vernon Supp. 2010).  The affirmative
family-violence finding entered in this case does not affect Appellant’s
sentence because the State did not allege that he had previously been convicted
of assault–family violence.  See id.
' 22.01(b)(2)(A). 






[3]Alfaro signed an
affidavit of non-prosecution prior to trial. 






[4]The medical
records introduced by the State provided in part that Alfaro suffered from a
nasal fracture when he was admitted to the hospital the day of the
offense.  





[5]The court instructed
the jury that “A person acts intentionally, or with intent, with respect to a
result of his conduct when it is his conscious objective or desire to cause the
result.”  See Tex. Penal Code Ann. ' 6.03(a) (Vernon
2003).  The court also instructed that “A
person acts knowingly, or with knowledge, with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the
result.”  See id. ' 6.03(b).   





[6]“[A] person is
justified in using force against another when and to the degree the actor
reasonably believes the force is immediately necessary to protect the actor
against the other’s use or attempted use of unlawful force.”  Id.
' 9.31(a).