**Affirmed and Opinion Filed October 19, 2023**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00932-CR**

**CLYDE JOE PARKER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 071455**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Goldstein

Appellant Clyde Joe Parker, II appeals his convictions for sexual assault, kidnapping, and aggravated assault of complainant V.D.W. A jury convicted appellant and sentenced him to fifty years' confinement. In his first issue, appellant challenges the legal sufficiency of the evidence to support his convictions. We conclude that the multiple forms of evidence—testimonial, photographic, and video—affirmatively linked appellant to the sexual assault, kidnapping, and aggravated assault.

In his second issue, appellant challenges the trial court's denial of his request for an instruction on the affirmative defense of necessity. We conclude that the evidence of appellant's aggravated assault, causing V.D.W. to lose consciousness, and his subsequent actions of putting her unconscious body into his truck, going to McDonald's, taking her to his residence, and sexually assaulting her there, militates against the asserted harm of leaving her unconscious in a parking lot.

We affirm the trial court's judgment.

## BACKGROUND FACTS

V.D.W. was a regular visitor of Grand Central Station, a shared ministries soup kitchen, where she ate meals, showered, and did laundry. The soup kitchen was open weekdays from 9:00 a.m. to 1:00 p.m. V.D.W. knew appellant and had been to his house, but V.D.W. testified that they were not in a dating relationship and had not had consensual sex.

On August 31, 2019, V.D.W. who had been helping appellant move things out of his truck for food and money, was alone with appellant in his vehicle. Appellant, for no apparent reason, attacked V.D.W. by punching her in the face. Video evidence, captured by a nearby surveillance camera, showed appellant driving into a parking lot, V.D.W. exiting the vehicle and attempting to leave, and appellant leaving the driver side, grabbing at, and punching V.D.W. After being punched, V.D.W. fell to the ground, seemingly unconscious and non-responsive. Appellant then lifted V.D.W., put her in the truck, and left the parking lot.

Although V.D.W. had no memory of exiting the vehicle, she recalled waking up at appellant's residence, where she was again beaten and then raped. V.D.W. was treated at the emergency room on September 1, 2019. She presented with a bruised and bloody face and was diagnosed with a broken collar bone and concussion.

On November 20, 2019, appellant was charged by indictment in Grayson County for the felony offenses of aggravated sexual assault, aggravated kidnapping and aggravated assault. Appellant pleaded not guilty to the charged offenses, and trial commenced on September 13, 2021. During the first phase of the trial, the jury heard testimony from nine State witnesses and two defense witnesses, along with video evidence of part of the indicted offenses of aggravated assault and aggravated kidnapping that occurred on August 31, 2019. After all evidence, the jury received the charge of the court, which provided specific definitions and then set forth the applicable law to enumerated facts. The jury verdict forms included questions for both the indicted charge and lesser included offense for each count. For the first two counts of aggravated sexual assault and aggravated kidnapping, the jury found appellant guilty of the lesser included offenses of sexual assault and kidnapping respectively. For the third count of aggravated assault, the jury found appellant guilty of the charged offense. Punishment was tried to the trial court, which heard evidence and assessed punishment at fifty years' confinement. This appeal followed.

**DISCUSSION**

**I.    LEGAL SUFFICIENCY**

In his first issue, appellant contends that the evidence was legally insufficient to support his conviction, averring entitlement to reversal on all three charged offenses. As to sexual assault, appellant contends the element of consent is based on mere speculation. On the kidnapping conviction, appellant argues there is no evidence that appellant used or threatened to use deadly force after placing V.D.W. in his vehicle to show he had the specific intent required for abduction. Lastly, appellant avers that V.D.W.'s injuries do not qualify as "serious bodily injury" to support the aggravated assault conviction.

The standard of review for determining the legal sufficiency of the evidence to support a conviction is whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Liverman v. State*, 470 S.W.3d 831, 835–36 (Tex. Crim. App. 2015); *Jackson v. Virginia*, 443 U.S. 307, 319, (1979). This standard requires the appellate court to defer "to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Villa*, 514 S.W.3d at 232; *Jackson*, 443 U.S. at 319. The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the

–4–

evidence. *Villa*, at 232; *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015). Deference to the trier of fact extends to the inferences drawn from the evidence as long as the inferences are reasonable ones supported by the evidence and are not mere speculation. *Villa*, at 232; *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

### A.    Count 1: Sexual Assault

Appellant does not dispute having sexual intercourse with V.D.W. but asserts that the State failed to establish that V.D.W. did not consent to the sexual intercourse. The Penal Code defines lack of consent, in part, as follows:

> (b) A sexual assault . . . is without consent of the other person if:
>
> > (1) the actor compels the other person to submit or participate by the use of physical force, violence, or coercion; [or]
> >
> > . . .
> >
> > (3) the other person has not consented and the actor knows the other person is unconscious or physically unable to resist.

TEX. PENAL CODE ANN. § 22.011(b)(1), (3). The State argues that there was sufficient evidence to support appellant's conviction under both definitions. We need not consider subsection (b)(1) because we conclude there was legally sufficient evidence to support lack of consent under (b)(3).

In *Elliott v. State*, the court of criminal appeals held the State is not required to prove the victim was physically unable to resist in order to show lack of consent. 858 S.W.2d 478, 485 (Tex. Crim. App. 1993). Rather, the Court held that "where assent in fact has not been given, and the actor knows that the victim's physical

–5–

impairment is such that resistance is not reasonably to be expected, sexual intercourse is 'without consent' under the sexual assault statute." *Id.*

Here, the surveillance footage showed appellant stopping the truck, moving to the passenger side, and punching V.D.W., who was trying to flee. After two punches to the face, V.D.W. fell to the ground unconscious. Appellant then attempted to lift her into the truck but failed, and she drooped back onto the ground. Appellant then grabbed V.D.W.'s arm and tried to shake her awake, but she lay there, motionless. On his second attempt, appellant lifted V.D.W. and put her into his truck. At trial, V.D.W. testified that she did not remember everything that happened. Although she testified that she did not recall being sexually assaulted, she did remember going outside and smoking cigarettes afterward. When V.D.W. was taken to the emergency room the next day, she was interviewed by Karen Bounds, the Sexual Assault Nurse Examiner (SANE) Nurse. Bounds testified that V.D.W. recounted the events of the incident as follows:

> We were riding in Mark's truck. He stopped the truck, started hitting me with his fist on my right side of my head. When he was through, he drove to his house. I can't remember some details. He took my clothes off. The next thing I remember he was on top of me. I stayed because I didn't feel good. I got up this morning and walked to Grand Central Station.

Bounds testified that she recorded V.D.W.'s statement into a SANE report, which was admitted into evidence without objection. The report also includes V.D.W.'s initials and signature, indicating her consent to the collection of physical evidence to be given to law enforcement in any sexual-assault investigation.

Appellant contends that the record contains no direct statements from V.D.W., either in her statements during the SANE exam or in her trial testimony, indicating that she did not consent to sexual intercourse. Appellant thus argues that the jury "could only speculate" about lack of consent. We disagree. The evidence showed that appellant knocked V.D.W. unconscious, transported her to his home instead of the hospital, removed her clothes, and was "on top of" her when she awoke. The jury could have reasonably inferred from this evidence that V.D.W. had not given assent in fact. *See* TEX. PENAL CODE ANN. § 22.011(b)(3); *Elliott*, 858 S.W.2d at 485. Additionally, the surveillance footage showed that appellant attempting, but failing, to shake V.D.W. back to consciousness after he punched her. The jury could have reasonably inferred that appellant knew from V.D.W.'s condition, and the fact that he had to remove her clothes during her unconsciousness, that she could not reasonably resist. *See* TEX. PENAL CODE ANN. § 22.011(b)(3); *Elliott*, 858 S.W.2d at 485. Therefore, the jury could reasonably conclude from the evidence that the sexual assault was without V.D.W.'s consent.

We conclude that the evidence was legally sufficient to establish lack of consent beyond a reasonable doubt.

### B.    Count 2: Kidnapping

Appellant next argues that the evidence was insufficient to support his conviction for kidnapping.

The Penal Code provides that a person commits kidnapping "if he intentionally or knowingly abducts another person." TEX. PENAL CODE ANN. § 20.03(a). "'Abduct' means to restrain a person with the intent to prevent his liberation by (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." *Id.* § 20.01(2). "'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1). "Restraint is 'without consent' if it is accomplished by: (A) force, intimidation, or deception. . . ." *Id.* § 20.01(1)(A).[1] Thus, "a kidnapping becomes a completed offense when (1) a restraint is accomplished, and (2) there is evidence that the actor had the specific intent to prevent liberation by secretion or the use or threatened use of deadly force." *Santellan v. State*, 939 S.W.2d 155, 162 (Tex. Crim. App. 1997).

Appellant argues that there was no evidence of his intent to prevent V.D.W.'s liberation or his use or threatened use of deadly force. However, appellant restricts his arguments to after the assault in the parking lot. Specifically, he argues that (italics ours):

> It is undisputed that Appellant placed V.D.W. in his truck and took her to his home after she lost consciousness. However, there is no evidence that Appellant had the specific intent to prevent V.D.W.'s liberation by using or threatening to use deadly force. More specifically, there is no

---

[1] Subsection (1)(B) describes restraint without consent of children and is therefore inapplicable here. *See* TEX. PENAL CODE ANN. § 20.01(1)(B).

> evidence that Appellant used or threatened to use deadly force against V.D.W. *after the assault captured by the electric company surveillance cameras*. Although V.D.W. testified that she was scared to leave Appellant's house because she was afraid that he would attack her again, this testimony does not equate to the allegations the State was required to prove.
>
> Would Appellant be guilty of kidnapping had he driven V.D.W. to the hospital after she lost consciousness? Absolutely not. So the question is, what evidence did the State present that Appellant had the specific intent *to prevent V.D.W. from leaving his home* that amounted to the use or threatened use of deadly force? No such evidence exists.

This argument fails to account for appellant's conduct *before* he put V.D.W. into his truck. V.D.W. testified that the assault began while she was still in appellant's truck. When appellant pulled into the parking lot, surveillance footage showed V.D.W. opening the passenger-side door just before the truck came to a complete stop. She then exited the truck and began to walk away. Meanwhile, appellant exited from the driver's side, came around to her side and, as she was attempting to leave, began punching her in the face. Detective Ballew testified that punches to the face constitute deadly force. Therefore, the jury could have reasonably concluded that by punching V.D.W. in the face as she was attempting to flee, appellant intended to prevent her liberation by the use of deadly force. At that point, the offense was complete. *See Santellan*, 939 S.W.2d at 162. There was no need for the State to prove

that appellant intended to further prevent her liberation after they arrived at his home.[2]

We conclude that the evidence was legally sufficient to establish the offense of kidnapping beyond a reasonable doubt.

### C.    Count 3: Aggravated Assault

Appellant finally argues that the evidence was legally insufficient to support his conviction for aggravated assault because the evidence failed to show that V.D.W. suffered serious bodily injury.

Under the Penal Code, a defendant commits the offense of assault if, among other things, the defendant "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1). Assault is elevated to aggravated assault if the defendant causes the other person "serious bodily injury." *Id.* § 22.02(a)(1). The Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(8). The Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent

---

[2] We further reject appellant's contention that the State was required to prove his actual use of deadly force, whether at his home or otherwise. In *Brimage v. State*, the court of criminal appeals considered whether the use or threatened use of deadly force were "subsets of the act element of 'restraint'" or whether they "modify the *mens rea* element of 'intent to prevent liberation.'" 918 S.W.2d 466, 475 (Tex. Crim. App. 1994). The Court concluded that the latter construction is correct; kidnapping becomes a completed offense when a restraint is accomplished and the defendant "intended to prevent liberation and that he intended to do so by either secretion or the use or threatened use of deadly force." *Id.* Importantly, the Court rejected the argument that the State must prove actual use of deadly force: "It is therefore not necessary, as appellant argues, that the State prove a restraint accomplished by either secretion or deadly force. Instead, the State must prove that a restraint was completed and that the actor evidenced a specific intent to prevent liberation by either secretion or deadly force." *Id.* at 476.

disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(46).

Dr. Jason Carter, emergency physician at Wilson N. Jones Hospital, examined and oversaw the treatment of V.D.W. Dr. Carter observed bruising and dried blood on her face. V.D.W. complained of pain on her shoulder and to her face. A CAT scan of the head, neck, the cervical spine, and an x-ray of the shoulder, were performed and reflected V.D.W. had a broken collar bone. Additionally, Dr. Carter's clinical diagnosis was that she had a concussion. Dr. Carter testified that concussions can impact someone's memory called "anterograde or retrograde amnesia is the big word. It just means you might not remember the events that happened either before or after that head injury." Dr. Carter agreed that if "someone is hit and they lose consciousness[,]" that means they have a concussion.

Dr. Carter testified that, in his understanding, "serious bodily injury means bodily injury that creates a substantial risk of death, or causes death, serious permanent disfigurement, or protracted loss of impairment of the function of any bodily member or organ." When asked his opinion, Dr. Carter opined that V.D.W.'s "injuries would be consistent with serious bodily injury." He explained that from the video, he could "see she's unconscious." He described the assessment process in approaching an unconscious person, in an assault case, the concern is first about "spinal cord injury from blunt trauma to the head" as such an injury could result in death. Dr. Carter also testified that he would "anticipate that the longer you are

–11–

unconscious, the more severe your injuries. . . . So being unconscious for a minute, in my mind, raises the seriousness of the injuries in that case." Based upon the video, '[s]he had what I would consider, I guess, a protracted loss of consciousness with a—you know, high serious risk of a brain injury" that could possibly result in death.

> Q. Based upon all of your years of experience, and what you have observed, and the people that you have treated, do you believe that the injuries sustained in this case, that have been admitted in the medical records, the photos, the video that you have seen, do you believe that constitutes serious bodily injury?
>
> A. Yes, sir.
>
> Q. Do you have any reasonable doubt as to whether serious bodily injury took place?
>
> A. No

On this record, the jury could have reasonably concluded that appellant caused V.D.W. to suffer a bodily injury that created a substantial risk of death.

Accordingly, we conclude that the evidence was legally sufficient to support appellant's conviction for aggravated assault.

### D.    Summary

In light of our conclusion that the evidence was legally sufficient to support appellant's conviction on all three alleged counts, we overrule appellant's first issue.

## II.    JURY CHARGE

In his second issue, appellant contends that the trial court erred in denying his request for an instruction on necessity as a defense to the charge of aggravated

–12–

kidnapping and the lesser-included charge of kidnapping. Section 9.22 of the Texas

Penal Code, entitled "Necessity," provides:

> Conduct is justified if:
>
> > (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
> >
> > (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
> >
> > (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22.

A court of appeals applies a two-step process in analyzing a complaint of jury charge error. First, an appellate court must determine if an error actually exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Second, if error is found to exist, the court must then determine if the error caused sufficient harm to warrant reversal. *Almanza*, 686 S.W.2d at 171.

A trial court is required to instruct the jury on any defensive theory that is raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). However, this rule is subject to the confession-and-avoidance doctrine, which applies to the necessity defense. *Juarez v State*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010). Under the confession-and-avoidance doctrine, a defendant must admit

–13–

to all elements of a charged offense before he will be entitled to a defensive instruction. *Id.* at 401. Alternatively, a defensive instruction is required when the defendant's evidence "essentially admits to every element of the offense, including the culpable mental state." *Id.*

In *Juarez*, the Court distinguished the case before it from previous decisions holding that a defendant's denial of an element of the charged offense precluded a necessity instruction under the confession-and-avoidance doctrine. *Id.* at 405 (citing *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007); and *Ex parte Nailor*, 149 S.W.3d 125, 132–33 (Tex. Crim. App. 2004)). Juarez was charged with assault on a peace officer for biting the officer's finger during an arrest. *Id.* at 400. Though Juarez denied biting the officer intentionally, knowingly, or recklessly, he had also admitted that he bit the officer to get the officer off of him because the officer was causing him to suffocate. *Id.* at 405. Despite his denial, the Court held that "Juarez's mental state—that the biting was done either intentionally, knowingly, or recklessly—could have reasonably been inferred from his testimony about the circumstances surrounding his conduct." *Id.* (citing *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) ("Mental states are almost always inferred from acts and words.")). The Court thus concluded that the confession-and-avoidance doctrine was satisfied because Juarez admitted to both the act and the requisite mental state. *Id.*

Here, like Juarez, appellant denies having had the culpable mental state for kidnapping—indeed, that is the only element he attacks on appeal. But unlike Juarez,

there is no evidence to support an inference that, despite his denial, appellant admitted the culpable mental state. Appellant argues that there was no evidence that he used or threatened to use deadly force after placing V.D.W. in his vehicle to show he had the specific intent required for abduction. Appellant asks us to speculate that his lifting V.D.W. up and putting her in his truck was necessary because it was preferable to leaving her unconscious in the parking lot.[3] As we explained above, at Section (I)(B), the culpable mental state for kidnapping is "the specific intent to prevent liberation by secretion or the use or threatened use of deadly force." *Santellan*, 939 S.W.2d at 162. Therefore, in order for the defense of necessity to apply, appellant would have to show that it was necessary to prevent V.D.W.'s liberation, not that it was necessary to remove her from the parking lot for her own safety. Appellant neither admitted that he intended to prevent V.D.W.'s liberation nor do the surrounding circumstances support such an inference.[4]

Appellant failed to satisfy the doctrine of confession and avoidance; therefore, the defensive instruction was not required. We overrule appellant's second issue.[5]

---

[3] During the charge conference, defense counsel argued that "the necessity was, the harm, was leaving an unconscious woman in an abandoned parking lot, and the harm that could be caused from leaving an unconscious woman in a parking lot abandoned is outweighed by the harm caused by the offense of kidnapping where he would be moving her from place to place without her ability to consent."

[4] Specifically, the jury had the aggregate of the evidence of appellant's conduct after leaving the parking lot, including a McDonald's stop and appellant minimizing V.D.W.s injuries as minor, requiring nothing more than a band aid, despite her request to go to the hospital.

[5] In denying appellant's request for an instruction on necessity, the trial court explained: "I was reading some background on necessity of defense that also says the conduct of the person seeking to assert the necessity defense, their conduct cannot cause the necessity." Given our disposition of appellant's second issue, we need not address the trial court's understanding that the defense was unavailable because appellant

# CONCLUSION

We affirm the trial court's judgment.

/Bonnie Lee Goldstein/

Do Not Publish                                                BONNIE LEE GOLDSTEIN
Tex. R. App. P. 47.2(b)                                       JUSTICE
210932F.U05

---

caused the necessity. We note, however, that there is a split in authority on that issue, as our sister court recently pointed out in *Navarro v. State*, 649 S.W.3d 603, 613 n.1 (Tex. App.—Houston [1st Dist.] 2022, pet. granted) (listing cases). The court of criminal appeals has granted the appellant's petition for review in that case and may ultimately resolve the split.



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

CLYDE JOE PARKER, Appellant

No. 05-21-00932-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 397th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 071455.
Opinion delivered by Justice Goldstein. Justices Carlyle and Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 19th day of October, 2023.